## STATE EX REL. HARRINGTON *v.* KENNEY, AUDITOR.

CONSTITUTIONAL LAW — *Legislative assembly — Compensation of members.* — The first legislative assembly of the State having passed no laws, the second legislative assembly made an appropriation by law for the payment of its members at the same rate established by the Constitution (§ 5, art v.) as the compensation for members of the first legislative assembly. Said section 5 also declares that after the first session the compensation of the members of the legislative assembly shall be as provided by law, *provided,* that no legislative assembly shall fix its own compensation. Section 8, article v. of the Constitution provides that the salary of no member shall be increased by any law passed during the term for which he is elected. *Held,* that the intent of the Constitution being to prevent a legislative assembly from securing extravagant compensation by its own votes, the second legislative assembly did not fix its own compensation within the intent, spirit, or scope of such constitutional provisions, and the appropriation was valid.

SAME — *Interpretation of Constitution.* — The constitution of a State should be liberally construed to determine the primary purpose of any constitutional enactment.

Original proceeding. Application for writ of mandate.

*McCutcheon & McIntire,* for Relator.

BLAKE, C. J. — This is an application to the court for a peremptory writ of mandate, directing the State auditor to audit and settle a claim of the relator for mileage and *per diem* for attendance as a member of the House of Representatives of the legislative assembly of the State. The following facts appear in the affidavit, and are admitted by the return: The relator was elected October 1, 1889, a member of the House of Representatives of the State, and qualified and served as such during the first legislative session; that as said member he has attended the second session of the legislative assembly of the State since the first Monday in January, 1891, a period of forty days; that a committee on mileage was appointed by said House, which inquired into and reported that the relator had and will have traveled 388 miles in going to and returning from the

seat of government from and to his residence, by the usual route, to attend the said legislative assembly; that said report was adopted; that R. G. Humber, as the speaker *pro tem.* of said House, issued the following certificate to the relator:—

"317.60.        STATE OF MONTANA, HOUSE OF REPRESEN-
                    TATIVES, HELENA, MONTANA, Feb. 13, 1891.

"This is to certify that the State of Montana is indebted to F. Harrington for 40 days' service as member of the House of Representatives of the second legislative assembly of the State of Montana, at the compensation of $6 *per diem*, and mileage of 388 miles at 20 cents per mile.

Attest:                              "R. G. HUMBER,
"CHAS. Z. POND, Chief Clerk.          Speaker *pro tem.*"

The relator presented, February 13, 1891, the foregoing account to the respondent, and requested him to audit and settle the same, and give a certificate thereof; but he refused so to do, in whole or in part.

The second legislative assembly, by an act entitled "An act to appropriate money for the executive, legislative, and judicial departments for the fiscal year ending December 1, 1891, and December 1, 1892," approved February 18, 1891, made an appropriation for the payment of this claim of the relator and his colleagues.    The respondent says in his return that he refused to draw a warrant on the State treasurer for the payment of said account, "for the reason that there is no law fixing the *per diem* and mileage of members of said second legislative assembly." This constitutes the sole inquiry at this time, and requires an interpretation of the following sections of the Constitution: "Each member of the first legislative assembly, as a compensation for his services, shall receive six dollars for each day's attendance, and twenty cents for each mile necessarily traveled in going to and returning from the seat of government to his residence by the usually traveled route, and shall receive no other compensation, perquisite, or allowance whatsoever.    No session of the legislative assembly after the first, which may be ninety days, shall exceed sixty days.    After the first session, the compensation of the members of the legislative assembly shall be as provided by law; *provided,* that no legislative assembly shall

fix its own compensation." (Art. v. § 5.) "No member of either House shall, during the term for which he shall have been elected, receive any increase of salary or mileage under any law passed during such term." (Art. v. § 8.)

We think it is evident that the Constitution fixed the compensation of the members of the first legislative assembly of the State, and conferred upon that body the power to enact appropriate laws for the payment of its successors. Such legislation can be amended at any time, subject to the restrictions that no legislative assembly can pass a law which defines its own compensation, and that members cannot receive an increase of salary or mileage. It was also contemplated that the first legislative assembly would provide the statutes which were applicable to these conditions. But it is conceded, and we take judicial notice of the fact, that that assembly, through causes which are irrelevant to the discussion, did not discharge its functions by the passage of any laws. The second legislative assembly is in session, and is necessarily enacting statutes to carry into effect some provisions of the Constitution, and thereby promote the general welfare and afford the relief which should have been granted by its predecessor. It is a reasonable presumption that this omission or exigency in our history could not have been anticipated. It is contended that the act, which gives to the members of the present legislative assembly their compensation by means of an appropriation, was passed through their official action, and is, consequently, repugnant to the Constitution and void.

In the consideration of the questions pertaining to this controversy, it must be borne in mind that we are interpreting the charter of the government of the State, and weighing one of the fundamental objects for which it was framed and ratified by the people. In *Commonw.* v. *Hartman,* 17 Pa. St. 118, the court held that a State constitution must have a liberal construction, and we must follow this canon of interpretation. What, then, was the mischief which the framers of the Constitution labored to guard against in the section *supra?* Their primary purpose was that a legislative assembly should not have the power to secure by the votes of its members extravagant compensation for their services. For this reason, they

were deprived of the privilege of fixing their *per diem* for attendance and mileage, and members who held over from a session by which either of these items had been increased could not receive the benefit thereof. The act making the appropriations, *supra*, has allowed to the members of the second legislative assembly the same compensation which is specified in the Constitution, *supra*. It is proper to state that the same persons with a single exception compose the House of Representatives of the first and second legislative assemblies, and that one half of the senators serve therein. These representatives were elected for the "term of two years," which has not expired. "One half of the senators elected to the first legislative assembly shall hold office for one year, and the other half for three years." (Const. art. v. § 4.) While each of these bodies must be treated as a separate organization, yet from a practical standpoint, the objections are as strong and relevant against the enactment of a statute fixing the compensation of a legislative assembly by the members of the first assembly, because there is a large majority (embracing all of them excepting eight), who have a direct interest in the result. We have already said that the first legislative assembly did not regulate this subject. Fifty-four members of the House of Representatives and nine senators of the legislative assembly could not receive an increase of salary or mileage under the section of the Constitution *supra*, if a law of this nature had been enacted. Shall the relator be compelled to wait until the third legislative assembly meets about two years from this time, and fixes his compensation which is now claimed? There is not a line of the Constitution which supports the suggestion, and every clause relating to the legislative department deals with prospective laws.

"No appropriation of public moneys shall be made for a longer term than two years." (Const. art. xii. § 12.) The act *supra*, neither increased nor diminished the compensation of the second legislative assembly, but contained the amounts which had been inserted in the Constitution, and which remain unaltered by any law.

Obeying the rules for the construction of the Constitution, which have been written by jurists from the foundation of the system of American State governments, and weighing the pe-

culiar and exceptional circumstances which attend this investigation, we must indulge "every possible presumption in favor of the validity" of the act *supra*. We cannot say that the second legislative assembly, within the intent, spirit, and scope of the Constitution, has fixed its own compensation. We are therefore of the opinion that the relator is entitled to the relief which he has prayed for.

It is ordered and adjudged that a peremptory writ of mandate be issued in accordance with the prayer of the affidavit of the relator herein.

HARWOOD, J., and DE WITT, J., concur.